USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/15/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CHAUNCEY MAHAN,                                             :
                              Plaintiff,                    :
                                                            :   14 Civ. 5075 (LGS)
            -against-                                       :
                                                            :   **OPINION AND ORDER**
ROC NATION, LLC, *et al.*,                                  :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

This action arises from Plaintiff Chauncey Mahan's work as a sound engineer on three albums, published by Defendant Roc-A-Fella Records ("Roc-A-Fella") and featuring Defendant Shawn Carter. The Amended Complaint seeks a declaratory judgment that Mahan shares copyright interests in the albums and in related, unpublished recordings. Plaintiff also seeks damages for conversion and trespass to chattel arising from an incident in which Defendants allegedly contacted the Los Angeles Police Department, resulting in the seizure of equipment owned by Plaintiff. Defendants Roc-A-Fella and Carter move to dismiss the Amended Complaint. For the following reasons, their motion is granted.

**BACKGROUND**

The facts below are taken from the Amended Complaint and assumed to be true for the purposes of this motion.

Plaintiff Chauncey Mahan is a sound engineer and music programmer who has collaborated with a number of prominent music artists. Defendant Roc-A-Fella is a record label founded in 1995 by Defendant Shawn Carter, a recording artist popularly known as Jay Z. Defendant Roc Nation ("Roc Nation") is a "full-service entertainment company," also founded by Carter, engaged in talent management, music publishing, touring, merchandising, film and

television and new business ventures.

From August 1, 1999, to November 15, 2000, at Carter's request, Roc-A-Fella commissioned Mahan as an independent contractor to create sound recordings. During this period, Mahan contributed to 41 sound recordings in collaboration with Carter and Roc-A-Fella. These 41 recordings were sold as part of three albums (the "Albums"), and 31 of these featured performances by Carter himself (the "Carter Recordings"). Another ten recordings (the "Beanie Sigel Recordings") featured a non-party rapper popularly known as Beanie Sigel. Mahan is credited and thanked as a contributor in the materials included in the recordings' CDs.

Mahan's collaborative relationship with Carter and Roc-A-Fella ended in November 2000. At the time, Mahan possessed computer hard drives and storage peripherals that contained "unpublished joint works" -- that is, records and mixes produced with Carter and Roc-A-Fella that were not ultimately released to the public. Mahan also had in his possession removable storage containing both unpublished recordings and album versions of songs. In November 2000, Mahan wrote to executives at Roc-A-Fella to inform them that "he was in possession of multi-track recordings made in collaboration" with Roc-A-Fella. Mahan never received a response.

On April 17, 2014, counsel for Roc Nation was told to meet Mahan at his storage unit. There, they spent several hours inventorying "valuable items" in Mahan's possession. The Amended Complaint alleges that, afterwards, Defendants instructed counsel for Roc Nation to call the local police and convince them that Mahan should be arrested for the possession of stolen property. On April 18, 2014, the Los Angeles Police Department seized items from Mahan's storage unit. Mahan was not arrested or charged with any crimes related to the incident.

On May 6, 2014, counsel for Mahan participated in a telephone conference with counsel

2

for Roc Nation.  During this call, Mahan's counsel asserted a "joint copyright ownership interest" in the sound recordings retrieved from Mahan's storage unit.

On July 8, 2014, Mahan filed this action.  The Amended Complaint alleges five claims, including four claims for declaratory judgment pursuant to the Copyright Act, 17 U.S.C. § 101 et seq.  Mahan seeks a declaratory judgment that, although Roc-A-Fella may have registered copyrights to the Albums as "compilation works," Mahan possesses copyright interests in the Albums' individual tracks.  Mahan also seeks judicial declarations that he shares joint copyright ownership interests with Carter in the Carter Recordings and with Roc-A-Fella in the Beanie Sigel Recordings.  Mahan also seeks a declaratory judgment that he has copyright ownership interests -- and that Defendants have none -- in unpublished recordings, including "Original B-Side mixes and untitled dubplates."  Mahan's fifth claim alleges that Roc-A-Fella, Carter and Roc Nation committed conversion and trespass to chattels by "initiating a 'sham' criminal proceeding against Mahan," resulting in the seizure of Mahan's chattels -- specifically, removable storage media, computers, hard drives and an audio player -- by the Los Angeles Police Department.

**STANDARD**

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013).  To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Rule 8 of the Federal Rules of

Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, the court may consider the complaint, "[d]ocuments that are attached to the complaint or incorporated in it by reference," "document[s] upon which the complaint solely relies and which is integral to the complaint," and "matters of which judicial notice may be taken." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 63 n.4 (2d Cir. 2012) (citations and internal quotation marks omitted).

## DISCUSSION

### I.    DECLARATORY JUDGMENT CLAIMS

As Plaintiff's declaratory judgment claims are time-barred under the Copyright Act, these claims must be dismissed.

#### A.    Applicable Law

"Civil actions under the Copyright Act are subject to a three-year statute of limitations." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (citing 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.")). "A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Id.*; *accord Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124-25 (2d Cir. 2014) (reaffirming *Merchant*). "A defendant's express assertion of adverse ownership or a plain and express repudiation of plaintiff's ownership . . . will trigger the accrual of the statute of limitations." *Brand v. RMM*, No. 10 CIV. 0287 (AJP), 2011 WL 1496344, at *4 (S.D.N.Y. Apr. 18, 2011) (internal quotation marks omitted); *accord Kwan v.*

4

*Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) ("[A]ny number of events can trigger the accrual of an ownership claim, including an express assertion of sole authorship or ownership." (internal quotation marks and alteration omitted)).  "For example, a claim can accrue: when a [work] is published without the alleged co-author's name on it; when alleged co-authors are presented with a contract identifying the defendant as the sole owner and copyright holder; or when alleged co-owners learn they are entitled to royalties that they are not receiving." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013) (citations and internal quotation marks omitted); *accord id.* (noting that alleged "author does not need to bring suit until there has been an 'express repudiation' of [his] claim" to ownership of work).  In addition, an alleged "co-author knows that he or she jointly created a work from the moment of its creation." *Merchant*, 92 F.3d at 56.

### B. Application

Plaintiff's declaratory judgment claims must be dismissed as time barred, as it is clear from the face of the Amended Complaint and the parties' submissions that these claims accrued more than three years before this action was commenced.

Plaintiff filed this action on July 8, 2014.  Thus, if Plaintiff's co-ownership claim accrued before July 8, 2011 -- three years before the commencement of this suit -- Plaintiff's claims for declaratory judgment under the Copyright Act are time barred.  Plaintiff's claims are untimely for at least three independent reasons.

<u>First</u>, Plaintiff's claims are time barred as a result of Roc-A-Fella's registrations with the United States Copyright Office.  Roc-A-Fella recorded its copyrights in the Albums in three separate registrations, dated February 28, 2000; April 12, 2000; and December 11, 2000.  None of

5

these registrations mentioned Plaintiff as a joint copyright holder.  The Copyright Act provides that "[r]ecordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document." 17 U.S.C. § 205(c).  Under the Copyright Act, the three-year statute of limitations begins to run when a "copyright certificate listing [defendants] as authors [i]s filed." *Margo v. Weiss*, No. 96 CIV. 3842 (MBM), 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998), *aff'd*, 213 F.3d 55 (2d Cir. 2000).  Accordingly, no later than December 11, 2000, Plaintiff had constructive notice of Roc-A-Fella's assertion that it exclusively held the Albums' copyrights.

Second, the copyright notices printed on the Albums' packaging also should have given Plaintiff reason to know of his alleged injury.  The packaging on the Albums -- one released in 1999, and two released in 2000 -- lists only Roc-A-Fella as the Albums' copyright holder.  "Public distribution of the work at issue bearing copyright notices in the name of the defendant(s) which exclude the plaintiff claiming to own the subject copyright has been held to create sufficient notice to begin the running of the statute of limitations." *Ortiz v. Guitian Bros. Music Inc.*, No. 07 CIV. 3897, 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008); *accord DeCarlo v. Archie Comic Publ'ns, Inc.*, 11 Fed. App'x 26, 29 (2d Cir. 2001) (summary order) (holding that statute of limitations began to run when plaintiff "read the copyright notice in [comic book] which gave the sole copyright" to defendant's subsidiary).  The copyright notices on the Albums' packaging here, therefore, provide further evidence that Plaintiff had reason to know of his alleged injury in 2000, if not earlier.

Third, the absence of any royalties sent to Plaintiff also gave him reason to know of his injury.  As the Complaint itself alleges, the Albums were all commercial successes -- two of the

6

Albums debuted at number one on the Billboard 2000 album chart and the remaining Album peaked at number five on the same chart.  The limitations period begins to run when "alleged co-owners learn they are entitled to royalties that they are not receiving."  *Gary Friedrich*, 716 F.3d at 317; *accord Santa-Rosa v. Combo Records*, 471 F.3d 224, 228 (1st Cir. 2006) ("[W]e cannot think of a more plain and express repudiation of co-ownership than the fact that [defendant] openly, and quite notoriously, sold [plaintiff's] records without providing payment . . . .").  Plaintiff asserts that a reasonable person would not necessarily have reason to know that royalties were owed to him in this situation.  Considering the depth of Plaintiff's experience in the music industry and the substantial commercial success of the Albums, this assertion strains credulity.  *See Santa-Rosa*, 471 F.3d at 228 ("[I]t is hard to believe that a singer of [plaintiff's] stature would have been unaware that [defendant] was selling his recordings and thus claiming ownership over them until three years before this action was commenced.").

      Plaintiff's remaining arguments likewise fail.

Plaintiff argues that the limitations period begins to run only when there has been an express repudiation of the plaintiff's ownership claim and that express repudiation requires (a) private repudiation, (b) public repudiation *and* (3) implied repudiation.  Plaintiff, in a related vein, argues that express repudiation requires a written communication sent directly by the defendant to the plaintiff.  These arguments, however, misconstrue the case on which they rely.  In *Gary Friedrich*, 716 F.3d at 317-20, the Second Circuit discussed private, public and implied repudiation as alternative forms of "express repudiation" and concluded that summary judgment was inappropriate because there were genuine issues of material fact concerning each.  Indeed, as discussed above, *Gary Friedrich* lists several events that could trigger the limitations period,

including events where there is no direct communication between the parties. *See id.* at 317 (listing publication of book "without the alleged co-author's name on it" as a trigger); *DeCarlo*, 11 Fed. App'x 26, 29-30 (2d Cir. 2001) (citing plaintiff's knowledge of a television show's national broadcast and merchandising, and listing defendant as sole copyright holder, as evidence that the limitations period had begun).

Plaintiff also argues that, even if Roc-A-Fella held copyrights to the Albums, it is not the exclusive copyright holder for each and every song on the Albums. This argument is unpersuasive. Courts in this Circuit have repeatedly held that the protection of a copyright registration extends to all original constituent parts of a compilation. *See Cooley v. Penguin Grp. (USA) Inc.*, 31 F. Supp. 3d 599, 608 (S.D.N.Y. 2014) ("The Copyright Act grants the author of a derivative work copyright protection only in whatever increment of original expression the author contributes, but does not disturb the ownership of the copyright or the rights of its holder in respect of the underlying work."); *E. Am. Trio Products, Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 417 (S.D.N.Y.), *dismissed*, 243 F.3d 559 (Fed. Cir. 2000); *cf. Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010) ("An album falls within the Act's expansive definition of compilation."). Here, the songs are constituent parts of the Albums, and Plaintiff does not challenge that the songs are anything but original creations. In other words, he does not claim that Defendants incorporated into the Albums any pre-existing songs in which he held the exclusive copyright. Accordingly, Roc-A-Fella's copyrights extend to all of the songs in the Albums.

Plaintiff also contends that, even if Roc-A-Fella holds the copyrights to the final versions of the Albums, it does not own the rights to any unpublished recordings created in connection

with the Albums' production.  This argument is also incorrect.  Courts have "consistently rejected" the "notion that a copyright owner is required to separately register every draft or version of an evolving work, as "[s]uch a requirement would be wasteful and impractical." *Peterson v. Kolodin*, No. 13 Civ. 793, 2013 WL 5226114, at *6 (S.D.N.Y. Sept. 10, 2013); *accord Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 284 (4th Cir. 2003) (adopting the view that registration of final work is "sufficient to permit an infringement action on the underlying parts"), *overturned on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).  Indeed, "registration is not a condition to obtaining copyright," but "copyright automatically inheres in a work the moment it is 'created,' which is to say 'when it is fixed in a copy or phonorecord for the first time.'"  2-7 Nimmer on Copyright § 7.16.  Roc-A-Fella correctly asserts, therefore, that it owns the copyrights to the unpublished works as "derivative" or "underlying" parts of the Albums.

Plaintiff's reliance on *Stone v. Williams*, 970 F.2d 1043, 1051 (2d Cir. 1992), is also unavailing.  Plaintiff cites *Stone* for the proposition that the three-year limitations period is inapplicable here, but *Stone* presented vastly different facts.  *Stone* dealt with an infringement claim where the plaintiff's copyright ownership was already "properly established" -- not a claim in which a plaintiff seeks to establish co-ownership.  *Stone*, 970 F.2d at 1051.  The Second Circuit subsequently noted, "*Stone* stands for the narrow proposition that, in certain situations, the statute of limitations will not be applied to defeat the copyright co-ownership claim of an author's relative accruing more than three years before the lawsuit where uncertainty surrounded the relative's status as a member of the author's family." *Merchant*, 92 F.3d at 56.  *Stone* is therefore inapposite.

Plaintiff's remaining arguments assert that (1) statutes of limitations are unconstitutional, (2) this Court lacks "subject matter jurisdiction" to apply any applicable statutes of limitation and (3) Defendants lack "standing to interpose" any applicable statutes of limitation. These arguments are deemed frivolous and therefore fail.

Accordingly, Plaintiff's declaratory judgment claims are dismissed.

## II.   CONVERSION AND TRESPASS TO CHATTELS

As Plaintiff cannot overcome the absolute privilege accorded to Defendants' communications with the Los Angeles Police Department, Plaintiff's claim for conversion and trespass to chattels is dismissed.

"A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012). Accordingly, New York choice-of-law rules apply here.

Although "New York courts now apply a 'paramount interest' test for choice of law questions, under which the law of the jurisdiction having the 'greatest interest in the litigation' is applied, lex loci delicti remains the general rule in tort cases to be displaced only in extraordinary circumstances." *Hadar v. Concordia Yacht Builders, Inc.*, 886 F. Supp. 1082, 1093 (S.D.N.Y. 1995) (citation and internal quotation marks omitted); *accord Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 195 (1985) ("Under traditional rules, the law of the place of the wrong governs all substantive issues in the action . . . ."). Here, as the Complaint focuses on the Los Angeles Police Department's confiscation of Plaintiff's property, California is the place of the alleged wrong. California law therefore applies.

10

Section 47(b) of the California Civil Code creates "a privilege that bars liability in tort for the making of certain statements." *Hagberg v. Cal. Fed. Bank FSB*, 81 P.3d 244, 248 (Cal. 2004) (citing Cal. Civ. Code § 47(b) (barring civil actions for damages for communications made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate]")). The California Supreme Court has applied this "unqualified" bar to all tort actions, except for malicious prosecution, based on communications in which "a citizen contacts law enforcement personnel to report suspected criminal activity." *Id.* at 364. This "unqualified privilege" applies even to allegedly false police reports, because other remedies -- such as criminal prosecution for perjury -- exist to deter such false or malicious communications. *Id.* at 364, 372.

This unqualified privilege applies to the allegedly false statements made by Defendants to the Los Angeles Police Department. Plaintiff cites no authority under California law to the contrary. Accordingly, Plaintiff has failed to state a claim for conversion or trespass to chattel, and this claim must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants Carter and Roc-A-Fella's motion is GRANTED. The Clerk of Court is respectfully directed to close all outstanding motions and to terminate the case.

SO ORDERED.

Dated: April 15, 2015
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

11